UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| JERRY MICHAEL MINOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 0:18-CV-124-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Jerry Michael Minor appeals the Commissioner's denial of his application for Disability Insurance Benefits (DIB) benefits (under Title II). The parties filed dueling summary judgment motions. The Court, having considered the full record under governing law, **DENIES** the Commissioner's motion (DE 9), **GRANTS** Minor's motion (DE 7) **IN PART**, and **REMANDS** this matter for appropriate reconsideration at steps 4 and 5. On remand, the ALJ must correct her failure to fully incorporate, in functional capacity and hypothetical questioning contexts, limitations she found credible, and analyze the impact (if any) of her misunderstanding as to Minor's work return on her conclusions.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Minor is currently 54 years old. *See, e.g.*, R. at 20. He alleges disability beginning on November 12, 2015. *See* R. at 145. Minor applied for DIB benefits in May 2016. *Id*. The SSA denied his claim initially on June 24, 2016, *see* R. at 51–60, and upon reconsideration on August 29, 2016. *See* R. at 63–79, 83–85. Following Minor's August 2016, request, *see* R. at 86–87, ALJ Melissa Hammock held a hearing on April 20, 2018. R. at 31–50. At the hearing, attorney William

1

Arnett represented Minor. *See* R. at 31. Claimant and impartial Vocational Expert (VE) Stephen Davis testified. R. at 34–50. ALJ Hammock subsequently denied Minor's claim on May 2, 2018. R. at 13–22. The Appeals Council denied review, and thus upheld the ALJ's decision, on November 23, 2018. R. at 1–3.

The ALJ made several particular findings in the required sequence.[1] She determined that Minor had not engaged in substantial gainful activity since his November 12, 2015, alleged onset date. R. at 15. The ALJ next determined that Minor had several severe impairments. *Id.* However, ALJ Hammock then found that Minor did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" R. at 15–16. The ALJ further made a detailed residual functional capacity (RFC) finding. R. at 16–20. Although ALJ Hammock found that Minor was "unable to perform [his] past relevant work," the ALJ determined that, given Minor's particular characteristics and RFC, "there are jobs that exist in significant numbers in the national economy that [Minor] can perform[.]" R. at 20–21. Based on these considerations, the ALJ ruled that Minor was not under a disability from November 12, 2015, through the date of decision. *See* R. at 13, 21. Dissatisfied with the result of the SSA's subsequent administrative process, which denied him relief, Minor turned to federal court for review.

---

[1] The ALJ, as an initial predicate for a period of disability (per 42 U.S.C. § 416(i)(2)(C)) and disability benefits (per 42 U.S.C. § 423(a)(1)(A)), found that Minor satisfied the §§ 416(i)(3) & 423(c)(1) insured-status requirements through December 31, 2021. R. at 13, 15

## II. ANALYSIS

### A. Standard of Review

The Court has carefully considered the ALJ's decision, the transcript of the administrative hearing, and the administrative record. The Court has turned every apt[2] sheet, primarily focusing on the portions of the record to which the parties specifically cite. *See* DE 6 (General Order 13-7), at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the

---

[2] That is, those records relevant to the particular issues Minor presents for review.

Acting Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).[3] At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Acting Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether

---

[3] The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table); *see also Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013) ("The standard for disability under both the DIB and SSI programs is virtually identical."), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4)(iv). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

B. <u>The ALJ reversibly erred.</u>

Minor makes two arguments: that Judge Hammock erroneously omitted credible (per the ALJ's own assessment) limitations from her RFC formulation and VE-posed hypotheticals, DE 7-1 at 6–9, and, broadly, that substantial evidence does not support ALJ Hammock's disability determination, *id.* at 9–12. The Court evaluates each in turn.

*RFC Formulation & VE Questioning*

ALJ Hammock, given limitations springing from Plaintiff's severe impairments,[4] found Minor retained the RFC to:

---

[4] Per the ALJ's finding:
> [S]pondylosis; stenosis; status post left L5-S1 lumbar microdiscectomy; degenerative joint disease and degenerative disc disease of the lumbar spine; osteoarthritis; obesity; restrictive airway disease; and status post fractured wrist[.]

R. at 15.

> [L]ift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently[;] stand and walk six hours and sit six hours in an 8-hour workday with the option to alternate between sitting and standing position every 30 minutes with no loss in productivity[;] frequently balance and stoop; occasionally kneel, crouch, crawl, and climb ramps and stairs; . . . [and] frequently handle and finger with the dominant right hand.

R. at 16. However, the ALJ determined that Minor could "never climb ladders, ropes or scaffolds" and "must avoid concentrated exposure to pulmonary irritants." *Id.* In assessing Minor's RFC, Judge Hammock gave "substantial weight" to the opinion of state consultant Dr. Sudhideb Mukherjee. R. at 17; *see also* R. at 19 ("Overall, the record supports Dr. Mukherjee'[s] assessment."). Indeed, the ALJ's RFC formulation fully incorporated Dr. Mukherjee's assessment of Minor's exertional and postural limitations, with one exception. *Compare* R. at 16 (RFC), *with* R. at 69–70 (Mukherjee's physical RFC assessment). ALJ Hammock found that Minor could "frequently" balance and stoop (R. at 16), while Dr. Mukherjee opined that Minor was limited to balancing and stooping "[o]ccasionally" (R. at 70).[5]

Judge Hammock clearly found Dr. Mukherjee's assessment highly credible and consistent with the medical proof. *See, e.g.*, R. at 17 ("State agency consultants are highly qualified experts in the evaluation of the medical issues in disability claims."); R. at 18 (noting support for and consistency with Dr. Mukherjee's view in "claimant's images, recovery from surgery, [ ] activities[,] . . . . treatment notes[,]" and treating physician Dr. Ira Potter's "report"). The ALJ provided no explanation for diverging from Dr. Mukherjee's opinion concerning Minor's postural limitations. Plaintiff argues (DE 7-1 at 7–8), and the Commissioner concedes (DE 9 at 6) that the ALJ erred by finding credible but failing to adopt Minor's more stringent postural limitations. *See*

---

[5] The SSA defines "[o]ccasionally" as "occurring from very little up to one-third of the time" and "frequent[ly]" as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5–6.

*also Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("[T]he ALJ is only required to incorporate, as part of [a VE] examination, evidence that is deemed credible."); *Santiago v. Comm'r of Soc. Sec.*, No. 1:13-CV-01216, 2014 WL 903115, at *6 n.8 (N.D. Ohio Mar. 7, 2014) (At step 5, if "the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's credible functional limitations," the upshot is that the ultimate finding typically "is not based on substantial evidence."). ALJ Hammock's questioning of VE Davis hinged on a hypothetical that tracked the deficient RFC. *See* R. at 47 ("frequently balance and stoop"); *see also* R. at 48 ("if we stayed with that hypothetical but added" a handling and fingering limitation).

Nonetheless, Defendant contends that the error was harmless. *See* DE 9 at 6–8. The Court, for several reasons, disagrees. At step 5, "the burden of proof shifts to the Commissioner." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). To carry that burden, and show that Minor "could perform work that is available in the national economy, the Commissioner must make a finding 'supported by substantial evidence that [Minor] has the vocational qualifications to perform specific jobs.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). "This kind of 'substantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a hypothetical question, but only if the question accurately portrays [Minor's] individual physical and mental impairments.'" *Id.* Here, the Commissioner concedes that the ALJ's RFC, and thus the foundational hypotheticals (R. at 47–48), understated Minor's (credible) physical limitations. DE 9 at 6. When a hypothetical "fails to describe accurately [a claimant's] physical . . . impairments[,]" that defect "is fatal to the VE's testimony and the ALJ's reliance upon it." *Howard*, 276 F.3d at 241. In similar circumstances, the Circuit has reasoned:

7

> [T]he ALJ relied upon [a physician's] assessment, yet the ALJ did not fairly reflect that assessment in the hypothetical because the court failed to include [claimant's] time and speed restrictions.
>
> Because the controlling hypothetical inadequately described [claimant's] limitations, the expert's conclusion that [claimant] could work as an assembler, inspector, packer, or production worker does not serve as substantial evidence that [claimant] could perform this work. . . . The ALJ's conclusion in this regard was error.

*Ealy*, 594 F.3d at 516–17.

The Circuit does permit a harmless error exception for a hypothetical "more favorable" to a claimant, *i.e.*, a formulation posing **greater** limitations than the evidence substantially supports. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 844–45 (6th Cir. 2005). However, that exception is obviously and logically inapplicable here. Instead, the Commissioner argues that the Court should find the error harmless because the jobs that VE Davis identified as options for Minor do not, per the Dictionary of Occupational Titles (DOT), require any ability to perform the inadequately limited activities, balancing and stooping. *See* DE 9 at 7.

While this argument has some facially persuasive force, it improperly invites the Court to supplant the VE's role. If the Commissioner could carry its step 5 burden by rote processing of a given claimant's limitations through the DOT requirements, it would render VE testimony mostly vestigial. Yet, "the VE's function is not to simply regurgitate verbatim information found in the DOT." *See Brown v. Comm'r of Soc. Sec.*, No. 12-12642, 2013 WL 4029048, at *11 (E.D. Mich. Aug. 7, 2013). Indeed, as the Circuit has explained, "the ALJ and consulting vocational experts are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the [DOT's] classifications." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). Accordingly, a VE has the ability to "tailor her finding to an individual's particular [RFC]." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir.

8

2009) (citation and quotation marks omitted); *see also* SSR 00-4P, 2000 WL 1898704, at *3 ("The DOT lists maximum requirements of occupations **as generally performed**, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT.").

When a hypothetical inadequately describes a Claimant's limitations, the Court "cannot assume that the vocational expert would have answered in a similar manner had the ALJ instructed [him] properly." *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) (quotation marks omitted) (quoting *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985)). And, a "vocational expert's testimony in response to [a deficient] hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work." *Id.* Put differently, a VE's "testimony concerning a claimant's ability to perform alternative employment **may only be considered** for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Id.* (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).[6]

---

[6] The Commissioner cites two unpublished district court decisions for its harmless error theory. *See* DE 9 at 7 (citing *Wills v. Colvin*, No. 14-C-960, 2016 WL 1060254, at *9 (E.D. Wis. Mar. 15, 2016) & *Watson v. Astrue*, No. 08-CV-518-GWU, 2009 WL 3415356, at *5 (E.D. Ky. Oct. 20, 2009)). Neither is helpful to Defendant. First, the *Wills* Court ultimately remanded the matter for the ALJ to "revisit the step five analysis . . . by including [omitted] limitations in the hypothetical." 2016 WL 1060254, at *9. Thus, any harmless error finding as to hypothetical inadequacy was dicta. Second, the *Watson* Court did not conclude that an ALJ's reliance on an inaccurate hypothetical was harmless error. *See* 2009 WL 3415356, at *5. Rather, Judge Unthank found that any error in rejecting a treating physician's opinion was harmless because the VE testified that a "30 minute sit/stand option"—a limitation the Court found "consistent with" the treating physician's "somewhat vague sit/stand limitation"—would not affect job availability. *Id.* By contrast, ALJ Hammock accepted Dr. Mukherjee's opinion and then failed to adopt a consistent limitation. Thus, neither cited case materially supports the argument the Commissioner now presses.

In sum, ALJ Hammock expressly based her step 5 finding on "the testimony of the vocational expert[.]" R. at 21. The Commissioner now concedes that the hypothetical basis for that testimony was erroneous. Nonetheless, Defendant now asks the Court to find, effectively, that the VE's opinion would not have differed if the hypothetical were accurate. Yet, the Court is no vocational expert. Further, given the flexibility available to VEs concerning the DOT, the Court cannot conclude that the posed non-expert reading of the DOT can supplant VE testimony as a substantial evidentiary foundation for the step 5 finding. Thus, remand, pursuant to 42 U.S.C. § 405(g) sentence four, for reevaluation of job availability is necessary and appropriate.[7] *Howse v. Soc. Sec. Admin.*, No. 3:17-1349, 2018 WL 6307945, at *9 (M.D. Tenn. Dec. 3, 2018) ("Because the hypothetical was less favorable to Plaintiff, the VE's testimony cannot rescue the ALJ's deficient explanation from the grasp of reversible error."), *report and recommendation adopted*, No. 3:17-CV-01349, 2019 WL 162378 (M.D. Tenn. Jan. 9, 2019); *Haller v. Comm'r of Soc. Sec.*, No. 09-CV-13582, 2010 WL 5562274, at *9 (E.D. Mich. Aug. 9, 2010) (finding hypothetical "failed to reflect" all limitations the ALJ found credible and recommending remand), *report and recommendation adopted*, *Haller v. Astrue*, No. 09-13582, 2011 WL 87250 (E.D. Mich. Jan. 11, 2011); *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 933 (E.D. Mich. 2005) (adopting recommendation to remand for based on inaccurate hypothetical).

---

[7] "If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Minor does not pursue a direct award of benefits, *see* DE 7 at 13, and the Court sees no basis for such relief here.

*Sit/Stand Option & Balancing Limitations*

Minor further argues that the ALJ's RFC requirement of an "option to alternate between sitting and standing position every 30 minutes[,]" R. at 16, is inconsistent with Dr. Mukherjee's occasional balancing restriction. DE 7-1 at 8–9. The Court sees no such contradiction. First, the RFC provides only an "option," not a mandate, for postural shifts every 30 minutes. Second, even if Minor chose to alternate his position on the available schedule (and the Court assumed that such switches required "balancing"), there remains no logical or factual basis for Plaintiff's claim that such activity would "require frequent and/or constant ability to balance." DE 7-1 at 8. Per the SSA, "occasionally" denotes a restricted frequency range "from very little up to one-third of the time[.]" SSR 83-10, 1983 WL 31251, at *5. During an 8-hour workday, a strict 30-minute schedule would amount to, at most, 16 sit/stand switches. Thus, for Minor's argument to carry any weight, the total time spent transitioning would need to exceed 2 hours and 40 minutes—*i.e.*, one-third of an 8-hour workday. Put differently, unless each postural swap would take 10+ minutes, there is no inconsistency between the sit/stand option and Dr. Mukherjee's occasional balancing limitation. Plaintiff cites, and the Court sees no record basis for relief on this argument.[8]

*Return to Past Work, Post-Surgery Recovery, and Pain*

Under the broad theory that the ALJ's "decision is not based upon substantial evidence[,]" Minor offers several contentions. DE 7-1 at 9–12. Plaintiff complains that "the ALJ incorrectly assumed Mr. Minor returned to his past work after surgery." DE 7-1 at 10.[9] Minor further argues

---

[8] To the extent Plaintiff suggests that standing, alone, requires "balancing" within the meaning of Dr. Mukherjee's credited limitation, he ignores that the subject opinion also provided that Minor could stand for approximately "6 hours in an 8-hour workday." R. at 69.

[9] On January 13, 2016, Dr. Matthew C. Werthammer operated on Minor's back. R. at 363. The surgery included a "[l]eft L5, S1 hemilaminotomy, foraminotomy, and microsurgical microdiskectomy." *Id.*

that the ALJ, in describing Plaintiff's post-surgery recovery, "mischaracterize[d] the record." *Id.* at 11. Specifically, Minor contends that Judge Hammock's "finding that there were no sensory deficits and positive straight leg raises was inaccurate." *Id.* at 11. From these sub-theories, Plaintiff concludes that "the ALJ failed to fully consider the severity of the claimant's post-surgery limitations." DE 7-1 at 13.

Minor does not take issue with ALJ's step-2 finding that he had not engaged in substantial gainful activity since his November 12, 2015, alleged onset date. R. 15; *see also id.* ("The claimant's earnings after his alleged onset date were from unemployment and disability benefits."). Nor does Plaintiff argue that Judge Hammock failed to recognize any of Minor's severe impairments, or that she erred in finding such impairments did not meet or medically equal a listed impairment. R. at 15–16. Minor also fails to claim any limitations (for RFC incorporation or VE consideration) omitted as a result of the ALJ's allegedly errant reporting on Minor's return to work, the existence of sensory deficits, or the results of positive straight leg raises. *Cf. McKenzie v. Comm'r, Soc. Sec. Admin.*, 215 F.3d 1327 (6th Cir. 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual."). Thus, it is unclear how exactly Plaintiff believes the alleged errors amount to a showing that the ALJ lacked "substantial evidence to support h[er] determination that [Minor] was not 'under a disability.'" *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). After all, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (emphasis added & citation omitted). Nonetheless, the Court evaluates the argument, unburdened by citation to authority, as best it can.

Plaintiff contends that ALJ Hammock mischaracterized certain medical evidence. DE 7-1 at 11. First, Plaintiff bemoans the ALJ's description of his surgeon's follow-up notes as stating that Minor "was doing better since the surgery with only occasional flare-ups due to increased activity." R. at 18; *see* DE 7-1 at 11. This claim is factually baseless. Post-surgery, Dr. Werthammer specifically noted Minor's "significant improvement" and "flare-ups . . . worsened by activity." R. at 398. The record does not explicitly tap a frequency for such "flare-ups," but the term, inherently and logically, connotes an intermittent (indeed, an occasional) issue. Next, Minor contends that "medical records fully support a finding of decreased range of motions and positive straight leg raise." DE 7-1 at 11. The records do, and the ALJ so found. *See* R. at 18 ("On objective testing, the claimant had [a] positive straight leg test at 45°."); *id.* ("On range of motion testing, [Minor] was generally decreased in the lumbar spine[.]"); R. at 1083 (notes of Dr. Ira B. Potter reporting the referenced tests). Thus, it is unclear what Plaintiff's gripe is on this sub-topic.

Finally, Plaintiff suggests that the ALJ "failed to fully consider the claimant's continued limitations and ongoing pain post surgery." DE 7-1 at 9. And, as to resuming work, Minor does show that the ALJ misinterpreted the nature of Plaintiff's self-reported, post-surgery "9-5" work. *Compare* R. at 318 (Patient "states he worked 9-5 yesterday and was so sore he could hardly move."), *with* R. at 18 (Minor "returned to his pipefitting job."). Minor reported working, in some fashion, on February 29, 2016. However, the full record makes clear that the ALJ erred in relying on a single ambiguous reference in Plaintiff's physical therapy records to find that Minor returned to his pipefitting job. *See* R. at 44 (Minor testifying that "My last day of work was November the 12th, 2015."); *see also* R. at 352 (Jan. 4, 2016, physical therapy notes: "patient[ ] . . . is currently off work"). The record of the very next visit, on March 2, 2016, shows the physical therapist's view that Minor "still require[d] trunk strengthening and mobility for . . . ability to return to work."

13

R. at 321; *see also* R. at 331 (March 23, 2016, PT assessment describing reason Minor has been "unable to return to work").[10] That said, Plaintiff fails to explain *why* the nature of his post-surgery work is material to any of the ALJ's conclusions.[11] Nonetheless, given the remand resulting from the described step 5 error, the ALJ should ensure, in the fresh review, that her evaluation of Minor's post-surgery limitations is based on accurate factual predicates and not internally inconsistent.

---

[10] Minor, on March 25, 2016, reported his intent to return "to work [at the] end of April." R. at 332. April, of course, is after the February date the ALJ believed Minor returned to work. Further, nothing substantiates an actual late-April 2016 return. *See, e.g.*, R. at 350 (May 2, 2016, PT visit notes). The record report's 2016 "FICA Earnings" of $7,038.46 for Minor paid by "Pipeline Industry Benefit Fund[.]" R. at 181. However, the Tulsa, Oklahoma, "Benefit Fund" is not one of Minor's prior employers. *See* R. at 176–81. [The Court takes judicial notice that the "Pipeline Industry Benefit Fund" identified itself in a 2016 federal proceeding as a "multi-employer plan[ ] under Section 3(37)(A) of ERISA" and a "trust fund[ ] established in accordance with Section 302 of the LMRA . . . for the purpose of providing health care, pension, and related benefits for participants and their dependents." *Pipeline Industry Benefit Fund v. Midwest Underground*, No. 4:15-cv-642-CVE (N.D. Ok. October 18, 2016), ECF No. 1 (Complaint).] Minor testified that he did draw some funds from his Union 401K. R. at 45. Most importantly, Minor received <u>unemployment</u> benefits for each quarter of 2016. R. at 182–83 (reflecting unemployment benefit payments of $3,438 in the 1st quarter, $4,290 in the 2nd, $5,070 in the 3rd, and $780 in the 4th).

[11] For instance, whether Minor was pipefitting or performing less-strenuous work for 8 hours on February 28, 2016, the ALJ ultimately found that: Minor "was **no longer able to perform his pipefitting position**," but that "he would be capable of less strenuous activity, consistent with" Dr. Mukherjee's view. R. at 18 (emphasis added). Substantial evidence supports this finding. As Judge Hammock noted, in addition to his 9-5 work (of *some* kind) in February, Minor reported that he was "shoveling snow" in March (R. at 322), and, on April 27, 2016, that he was "70% improved since initiating therapy" and had spent the prior weekend "sewing grass seed[.]" R. at 346. Dr. Mukherjee's opinion and Minor's post-operative activities adequately support the ALJ's finding regarding Plaintiff's capacity for "less strenuous activity" than pipefitting.

Ultimately, Judge Hammock found the medical proof consistent with, and supportive of Dr. Mukherjee's opinion. Thus, the ALJ, in fashioning Minor's RFC, fully adopted (with the notable exception discussed above) Dr. Mukherjee's opined limitations in fashioning Plaintiff's RFC. Minor does not challenge the "substantial weight" assigned to that opinion or suggest that Dr. Mukherjee failed to fully account for Plaintiff's post-surgery pain in reaching his conclusions regarding Plaintiff's functional limitations. *See Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV-640, 2014 WL 3845951, at *16 (S.D. Ohio Aug. 5, 2014) ("Once a severe impairment is found, plaintiff must still put forth evidence showing the degree of limitation resulting therefrom as the mere existence of a severe impairment says nothing about the resulting functional limitations."). Indeed, Minor identifies no record-supported functional restriction omitted from the numerous limitations the ALJ included in crafting Plaintiff's RFC.

*Compare* R. at 15 ("The claimant's earnings after his alleged [November 12, 2015,] onset date were from **unemployment and disability benefits**." (emphasis added), *with* R. at 19 ("After his [January 13, 2016,] surgery, [Minor] returned to his work for several months[.]").[12] The latter quote is not supported, and the ALJ shall ensure that her analysis correctly accounts for Minor's post-surgical history.

## III. CONCLUSION

For the reasons stated, the ALJ's opinion does not survive review. Accordingly, the Court, on the limited bases discussed, **GRANTS** DE 7 **IN PART**, and **DENIES** DE 9. Pursuant to 42

---

[12] The Commissioner interprets Plaintiff's argument as alleging an improper discounting of Minor's subjective pain complaints. *See* DE 9 at 8. That is not how the Court reads the filing. However, if Plaintiff intended to obliquely assert such a theory, the argument would warrant no relief. Given the defensible (and, again, unopposed) weight assigned to Dr. Mukherjee's assessment of limitations fairly attributable to Minor's impairments—as well as Plaintiff's reports of substantial post-surgery activity—any variance from the Plaintiff's subjective view of his capacity is substantially justified by objective medical evidence. *See* 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may [ ] consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). Further, the Court sees no direct inconsistency between Minor's hearing testimony regarding his limits and the ALJ's ultimate RFC finding; nor does Plaintiff identify any such conflict. *See, e.g.*, R. at 37 (Minor testifying that he could not stand for more than "25, 35 minutes" at a time); R. at 38 (Minor claiming he could only sit for "25, 30 minutes" before needing to "get up and move"); R. at 41 (Minor typically "stay[s] active from seven to five[.]"); R. at 16–17 (ALJ providing for "sit/stand accommodations" at 30-minute intervals "based on the claimant's hearing testimony").

The same reasoning would also foreclose relief if Plaintiff intended his argument on this topic as a procedural error claim. "Just as 'no trial is perfect, no administrative hearing or opinion is either; thus, in analyzing an ALJ's decision, a reviewing court is to look for fatal gaps or contradictions and not nitpick in search of essentially meaningless missteps.'" *Simonetta v. Comm'r of Soc. Sec.*, No. 13-10607, 2014 WL 806416, at *4 (E.D. Mich. Feb. 28, 2014) (adopting Report & Recommendation) (quoting *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1965 (N.D. Ill. 2011)). Thus, even "if an agency has failed to adhere to its own procedures," remand is unnecessary "unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (citation and quotation marks omitted).

U.S.C. § 405(g), the Court **REMANDS** this matter to the Commissioner for further proceedings consistent with this Opinion & Order. The Court will enter a separate Judgment.

This the 27th day of January, 2020.

Signed By:
*Robert E. Wier*  /s/ REW
United States District Judge